UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DON M. ANDREW, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2106** |
| **ST. TAMMANY PARISH PRISON** | **SECTION "B"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On August 18, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.   Factual and Procedural Background**

    **A.   Complaint**

The plaintiff, Don M. Andrew, Jr., ("Andrew"), was an inmate housed in the St. Tammany Parish Prison when he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the St. Tammany Parish Prison ("STPP") through the Critical Tactical Unit ("C.T.U."), the St. Tammany Parish Sheriff, Officer Cassidy, and Sergeant Christopher Cassidy.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 13. The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

Andrew alleges in his complaint that he was approached in his cell by a guard who told him to get to his knees. Andrew advised the guard that he could not because of a fused disk in his back at L-5. Andrew claims that the guard then took a hand shield and beat him.

Andrew further alleges that, after he was handcuffed, several guards dragged him to the shower area. He claims that he was in a lot of pain. At some point Sergeant Cassidy, who knew about Andrew's back problem, arrived at the shower, and Andrew was taken to the medical unit. Correctional Officer Ty Poynter told Andrew there was nothing wrong with him, but Andrew claims that he suffered bruising from the beating. He was brought back to isolation.

Andrew claims that, a few days later, he wrote to the Warden, and Sergeant Cassidy came to see him. He states that Sergeant Cassidy apologized for what happened and indicated that he should have told the guards about Andrew's back problems. Sergeant Cassidy assured Andrew that it would not happen again. Andrew did not indicate in his complaint what relief he seeks.

### B.     *Spears* Hearing

Andrew testified that he was placed in the St. Tammany Parish Prison on October 12, 2012, awaiting federal proceedings on charges of arson, mail fraud, and wire fraud. He stated that, upon his arrival at the prison, he told Intake Officer Davenport about his fused disk from 2005, a stab wound to his left arm which limits his range of motion, and a second degree burn on his foot which caused nerve damage. He informed them of these conditions so that he would not be placed in general population where he would be unable to defend himself.

Andrew further testified that, on July 9, 2014, a guard entered his cell and told him to get on his knees. Andrew told the guard that he could not get to his knees. He stated that the guard then shoved an arm shield into his face and other guards entered the cell, and they all beat him and held

him down. He stated that he did not resist the officers, although he did receive a disciplinary charge of insubordination, which he believes was dismissed.

Andrew further stated that when the officers got him into handcuffs, they pulled him up off of the floor and dragged him to the shower area. He was taken to the medical unit where he was examined by the medical staff. The medical personnel confirmed his back problems and gave him ibuprofen before he was sent back to isolation. He claims that a lady on the medical staff told him that nothing was wrong with him.

Andrew also stated that his back pain did not subside and he filed numerous requests for medical care after the incident. Each time, he would be seen in due course by medical personnel and given more medicine.

He also stated that he filed a grievance complaint about the incident, but he believes that it was thrown away because he did not receive a response. He also indicated that he saw Warden Longino some time later and the Warden told him that he did not get any grievances from him.

Andrew also testified that there are two officers at STPP with the sir name "Cassidy," and he intended to sue both. He did not know the first name of either person. He identified one man as a guard at the jail, and he did not allege anything about this guard. However, Andrew identified the other man as a Sergeant over the C.T.U. where he was housed. Under a broad construction, Andrew asserts that Sergeant Cassidy should have told the guards in his unit about his back problems. When asked how the Sergeant should have known about the back problems, Andrew stated that, when he was in another section of the prison, Sergeant Cassidy would let him sit on the bench during yard time, because of his back trouble.

Upon further questioning by the Court, Andrew testified that, because of the fused disk, he has problems bending, reaching, running, and climbing into a top bunk. Andrew acknowledged that he can in fact get to his knees, but it takes him a few seconds longer to do so. He conceded that, when this incident happened, he did not tell the guard that he needed extra time to get to his knees; he simply refused to comply with the guard's request.

### C.  Grievance Records

In connection with Andrew's testimony, the Court ordered counsel for the defendants to submit copies of the plaintiff's grievance and disciplinary records related to this incident. The Court has received the grievance records, which demonstrate that the prison officials did address Andrew's complaints about the incident. Counsel did not submit disciplinary records, which presumptively confirms Andrew's assertion that the prison did not pursue a disciplinary proceeding in connection with this incident.

The grievance records reflect that Andrew submitted several grievance forms in connection with the July 9, 2014, incident, and received responses from the prison officials. In the first grievance, which is not dated, Andrew simply announces that he had back surgery at L-5 and has four screws in his back. He asserts that Sergeant Cassidy had known this since 2012. He did not specify the relief desired and there are no indications that it was addressed by the prison.

The second complaint, marked received on August 4, 2014, indicates that, on July 9, 2014, Andrew was attacked by a C.T.U. guard when he told the guard he could not get on his knees or lie on the floor. This complaint was screened by Warden Longino, accepted, and referred to Lt. Winther. The response to this grievance dated August 4, 2014, from Lieutenant J. Scott Winther

indicates that the complaint was unfounded with the notation, "under I.A. investigation - use of force packet has been turned in." Andrew signed for a copy of this response on August 4, 2014.

The third complaint, date stamped August 26, 2014, indicates that, on July 9, 2014, he was injured and his radio was broken. He states that he spoke to "Cassidy" on August 4, 2014, about the incident. As relief, he requested that his radio be replaced. The form indicates that the grievance was accepted and referred to "Captain Hanson, Sr." This grievance was found to be unfounded in a response dated September 1, 2014, from Lieutenant J. Scott Winther, who indicated, "C.T.U. did not damage the above stated inmates [sic] radio during the shakedown." Andrew signed the receipt for this response on September 8, 2014, and requested the next step Warden's review.

The fourth complaint, dated September 2, 2014, contains another complaint by Andrew that his radio was broken on July 9, 2014. As relief, he requested that he be allowed to speak to the Warden. No written response appears in the record.

In the fifth complaint, marked received October 6, 2014, Andrew indicated that he was sending a follow-up for internal affairs from the incident on July 9, 2014. He indicated that he was still in pain and seeing the doctor. The complaint was screened by Warden Longino, accepted, and referred to "Captain Hanson, Sr." On October 9, 2014, Andrew signed a receipt for the response which stated: "Internal affairs reviewed the incident and found nothing wrong with the way incident was handled." The response was illegibly signed by a prison official and dated October 7, 2014.

## II.   **Standards of Review for Frivolousness**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous

nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely, because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. <u>Analysis</u>

Broadly construing Andrew's allegations, he appears to assert that on July 9, 2014, he refused to comply with the directive of an unidentified officer who instructed him to kneel on the ground. Based on the grievance records, the officers were present to conduct a shakedown or security search of his cell. When Andrew did not comply, the officer used force to force him to the ground and the first officer, accompanied by other unidentified officers, handcuffed Andrew and moved him to the shower area. Thereafter, Andrew was brought to the medical unit where he was

seen for his back discomfort and other alleged injuries received at the hands of the unidentified officers.

Andrew has not identified the officer who allegedly initiated the July 9, 2014, incident or any other prison personnel directly involved in the incident.  He instead asserts that one of the named defendants, Sergeant Cassidy, the head of the C.T.U., knew about his back problems and failed to advise or instruct the other officers in the unit so they would know about Andrew's limited mobility.  Andrew also has named two other defendants, the St. Tammany Parish Prison and the St. Tammany Parish Sheriff.  He has not identified a basis for either defendant to be held liable under § 1983.

### A.      St. Tammany Parish Prison

Andrew has named the St. Tammany Parish Prison, and its C.T.U. section, as a defendant.  A prison and its administrative departments are not entities that can be sued under § 1983 and the claims against this defendant are frivolous.

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.  *See Flagg Bros*., *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981).  However, the St. Tammany Parish Prison is not a person for purposes of suit under § 1983.  *See* 42 U.S.C. § 1983 (2006); *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989).  Under federal law, a county (or parish) prison facility is not a "person" subject to suit.  *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982).  There is no law, constitutional, statutory, or otherwise, that defines a parish jail or any

unit or department therein to be a person with the capacity to sue or to be sued. A parish jail is, as this Court has previously described, "not an entity, but a building." *See Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing St. Tammany Parish Jail with prejudice); *Jeffries v. St. Bernard Parish Sheriff's Dep't*, No. 12-1063, 2013 WL 6044365 at *4 (E.D. La. Nov.13, 2013) (Order adopting Report and Recommendation); *Bland v. Terrebonne Parish Crim. Just. Complex*, No. 09-4407, 2009 WL 3486449, at *3 (E.D. La. Oct.23, 2009) (Order adopting Report and Recommendation).

Andrew's claims against the St. Tammany Parish Prison, and the C.T.U., must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with 28 U.S.C. § 1915(e) and § 1915A.

### B.     St. Tammany Parish Sheriff

Andrew listed the St. Tammany Parish Sheriff as a defendant in his complaint, and has not alleged any action or inaction by the Sheriff in connection with the incident on July 9, 2014. As previously mentioned, a plaintiff must identify a constitutional violation to recover under § 1983. *See Flagg Bros*., *Inc.*, 436 U.S. at 156; *Dodson,* 454 U.S. at 312. Proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like a Parish Sheriff, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant would be liable under § 1983 only if he or she were "personally involved in the acts causing the deprivation of his constitutional

8

rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also*, *Watson v. Interst. Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Andrew does not allege that the St. Tammany Parish Sheriff was personally involved in the incident on July 9, 2014, or his subsequent medical care or that he had any personal involvement in the alleged incident. Andrew also has not alleged that he has suffered any injury directly resulting from any order or other policy implemented by the St. Tammany Parish Sheriff that would create a vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). For these reasons, Andrew's claims against the St. Tammany Parish Sheriff as a supervisory official are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### C. <u>Officer Cassidy</u>

At the *Spears* Hearing, Andrew indicated that he intended to name a prison guard he identified as Officer Cassidy, who was not listed in his complaint. As with the Sheriff, Andrew has not alleged any action or inaction by Officer Cassidy in connection with the incident on July 9, 2014. As previously mentioned, a plaintiff must identify a constitutional violation to recover under § 1983. *See Flagg Bros*., *Inc.*, 436 U.S. at 156; *Dodson,* 454 U.S. at 312. Without proof of this defendant's personal involvement in the alleged wrong, Andrew has failed to assert a basis for relief under §1983. Without this personal involvement, Andrew can not establish "a deprivation of his constitutional rights or a causal connection" between Officer Cassidy and his alleged injury.

*Douthit*, 641 F.2d at 346. Andrew's claims against Officer Cassidy are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

    **D.**    **Sergeant Cassidy**

Under the broadest construction, Andrew asserts that Sergeant Cassidy in the C.T.U. knew about his back problems and failed to instruct or advise the other guards in the C.T.U. about his injuries and limited movement. Andrew contends that, when he spoke to Sergeant Cassidy after the incident, the Sergeant acknowledged that the guards did not know about his back problems and told him that it would not happen again.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As discussed previously, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit*, 641 F.2d at 346. Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v.*

*Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459. The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Andrew has not alleged a constitutional violation by Sergeant Cassidy.

Even assuming that, at some point prior to this incident, Andrew told Sergeant Cassidy about his back problems, Andrew has not alleged that Sergeant Cassidy had the requisite intent to cause him harm required for an Eighth Amendment claim. As discussed above, to establish deliberate indifference, a prisoner must show that the defendant was "aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn," and that the defendant "actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).

In this case, Andrew indicated that Sergeant Cassidy was not present when the incident happened with the unidentified officers. The Sergeant, therefore, could not have been aware of an imminent and substantial risk of harm to Andrew, nor drawn an inference from circumstances he did not witness.

In addition, as Andrew ultimately conceded, his known back problems did not prevent him from getting to his knees. Sergeant Cassidy could not have known or anticipated that Andrew would decline to get on his knees and fail to follow a direct order from the unidentified guard which

resulted in the guard's use of force to effect compliance. Sergeant Cassidy can not be held responsible for preventing a harm he could not have anticipated.

For the foregoing reasons, Andrew's claims against Sergeant Cassidy are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

## IV. Recommendation

It is therefore **RECOMMENDED** that Andrew's § 1983 claims against the defendants, the St. Tammany Parish Prison and the C.T.U. unit, St. Tammany Parish Sheriff, Officer Cassidy, and Sergeant Christopher Cassidy, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 24th day of February, 2016.

                          **KAREN WELLS ROBY**
                          **UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.